**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **LIBERTY MUTUAL INSURANCE CO.,** : | |
| : | **Case No. 2:09-cv-111** |
| **Plaintiff,** : | |
| v. : | **Judge Holschuh** |
| **LARRY J. PETIT, et al.,** : | **Magistrate Judge Abel** |
| **Defendants.** : | |
| : | |

**MEMORANDUM OPINION & ORDER**

Liberty Mutual Insurance Company filed suit against Larry J. Petit, Eric J. Petit, Leslie Jo Petit, and the Estate of Karol A. Petit, seeking a declaratory judgment concerning liability coverage under an insurance policy issued by Liberty Mutual to E.A. Renfroe & Co., Inc., Larry Petit's employer. The Court's jurisdiction is based on diversity of citizenship. See 28 U.S.C. § 1332. This matter is currently before the Court on Liberty Mutual's motion for summary judgment. (Doc. 22).

**I.  Background and Procedural History**

E.A. Renfroe & Company, Inc. is a risk management company that specializes in helping insurance companies handle the onslaught of claims following a catastrophic event. (J. Renfroe Aff. ¶¶ 2, 4; Ex. 2 to Mot. Summ. J.). Following Hurricane Katrina, in October of 2005, Renfroe hired Larry Petit to work as a temporary insurance adjuster and assigned him to help State Farm Insurance Company adjust claims in Louisiana. (Id. at ¶ 6). Larry Petit and his wife, Karol Petit, drove from their home in Ohio to Louisiana, where they stayed in an RV park during Larry's temporary assignment. Petit was required to provide his own automobile for use on assignments and was required to maintain his own liability insurance on that vehicle. (Id. at ¶ 8). Renfroe reimbursed

him for his travel to and from Ohio and gave him additional compensation each day for meals and lodging. Petit was on call 24 hours per day and received daily standby pay when he was not adjusting claims. (Larry Petit Aff. ¶¶ 3-4; Ex. 1 to Mem. in Opp'n).

On November 15, 2005, Karol accompanied Larry as he performed his duties adjusting claims for State Farm. At the end of the day, they returned to the local State Farm office as they usually did. On the way back to the RV park, the car, being driven by Larry, hit a puddle of water, hydroplaned, flipped over and came to rest in a canal adjacent to the road. Karol, who was sitting in the passenger seat, died as a result of this accident. (Compl. ¶¶ 32-38).

On November 8, 2006, Larry and Karol's children, Eric and Leslie Jo Petit, along with the Estate of Karol Petit, filed suit in the Franklin County Court of Common Pleas against Larry Petit, alleging negligence and wrongful death. An Amended Complaint included a declaratory judgment claim against Liberty Mutual, the insurance company that had issued a business auto liability policy to Renfroe. This claim was later voluntarily dismissed. On January 17, 2008, the court granted default judgment against Larry Petit on the issue of liability only.

Because Eric, Leslie Jo, and the Estate continued to express their belief that the insurance policy that Liberty Mutual had issued to Renfroe provided liability coverage for Petit's automobile accident, Liberty Mutual filed a complaint for declaratory relief, asking this Court to declare that because Larry Petit does not qualify as an "Insured," Liberty Mutual is not obligated to pay any damages that Eric, Leslie Jo, and the Estate may recover as a result of the automobile accident. Liberty Mutual has now moved for summary judgment on that claim.

**II.     Standard of Review**

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)).  See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003).  All the evidence and facts, as well as

inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

4

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

**III.    Analysis**

    **A.    Law Governing Interpretation of Insurance Policy**

This Court's jurisdiction is based on diversity of citizenship. Liberty Mutual is incorporated in Massachusetts and has its principal place of business there. Defendants are citizens of Ohio and Georgia. In a diversity action, a federal court must apply the choice of law rules of the forum state. Montgomery v. Wyeth, 580 F.3d 455, 459 (6th Cir. 2009). Under Ohio law, when resolving a dispute over insurance coverage, absent a choice of law provision in the contract, the court must apply the substantive law of the state having the most significant relationship to the transaction and the parties. Factors to be considered include "the place of contracting, the place of negotiation, the

5

place of performance, the location of the subject matter, and the domicile, residence, nationality, place of incorporation, and place of business of the parties." Ohayon v. Safeco Ins. Co. of Ill., 91 Ohio St.3d 474, 477-78, 747 N.E.2d 206, 209-10 (Ohio 2001).

In this case, the parties agree that Alabama has the most significant relationship to the insurance contract and to the parties. Renfroe, the insured, is headquartered in Alabama and has its principal place of business there. Liberty Mutual issued the business automobile insurance policy to Renfroe at Renfroe's office in Alabama. (Renfroe Aff. ¶¶ 15-17). Moreover, an Alabama statute provides that when someone applies for an insurance contract in Alabama, the contract is deemed to have been made there and is subject to Alabama law. Ala. Code § 27-14-22.

Because Alabama has the most significant relationship to the insurance contract and the parties, Alabama law governs if there is a conflict between Alabama law and Ohio law regarding proper interpretation of the insurance policy. However, if there is no conflict, the Court may apply Ohio law. See Glidden Co. v. Lumbermens Mut. Cas. Co., 112 Ohio St.3d 470, 2006-Ohio-6553, 861 N.E.2d 109, at syl. ¶ 1 ("An actual conflict between Ohio law and the law of another jurisdiction must exist before a choice-of-law analysis is undertaken."). Here, the parties have not cited any significant difference between Ohio and Alabama law with respect to interpretation of insurance contracts. The Court will, therefore, apply Ohio law to interpret the insurance policy.[1]

In Costanzo v. Nationwide Mutual Insurance Company, 161 Ohio App.3d 759, 2005-Ohio-3170, 832 N.E.2d 71, the court stated:

---

[1] Petit and Renfroe expressly agreed that Alabama law would govern the interpretation of Petit's employment agreement. Therefore, with respect to the question of whether Petit was acting in the course and scope of his employment at the time of the accident, the Court is bound to apply Alabama law. See Schulke Radio Productions, Ltd. v. Midwestern Broad. Co., 6 Ohio St.3d 436, 436, 453 N.E.2d 683, 684, syl. (Ohio 1983).

> The interpretation of clear, unambiguous contract terms is a question of law particularly appropriate for resolution by summary judgment. Generally courts presume that the intent of the parties to a contract resides in the language they have chosen to employ in the agreement.
>
> If the language in a contract is clear and unambiguous, there is no issue of fact to be determined, and the court cannot create a new contract by finding an intent not expressed in the clear language employed by the parties. A reviewing court must give plain language in an insurance contract its ordinary meaning when ascertaining the intent of the parties.

Id. at ¶¶ 19-20 (internal citations omitted). If the terms of the contract are reasonably susceptible of more than one interpretation, ambiguities must be strictly construed in favor of the insured. See King v. Nationwide Ins. Co., 35 Ohio St.3d 208, 519 N.E.2d 1380, syl. (Ohio 1988).

With these general principles in mind, the Court turns to the question of whether Larry Petit was an "Insured" under the business auto policy issued to Renfroe by Liberty Mutual.

**B.      Relevant Provisions of Insurance Policy**

At the time of the accident, E.A. Renfroe & Co., Inc. was listed as the Named Insured on a business auto insurance policy, # AS1-351-280788-035, issued by Liberty Mutual. (Ex. B to Renfroe Aff. at 1). The page entitled "Business Auto Coverage Form" stated, "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations." (Id. at 27).

The insurance policy provided up to $350,000 in liability coverage for any one accident or loss related to a covered auto. (Id. at 1). Covered autos under the policy included "Nonowned 'Autos,'" described as "[o]nly those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes 'autos' owned by your 'employees' . . . but only while used in your business or personal affairs." (Id. at 27).

Liberty Mutual agreed to "pay all sums the 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (Id. at 28). An "insured" is defined in the policy as follows:

> Who Is An Insured:
>
> The following are "insureds":
> a.    You for any covered "auto"
> b.    Anyone else while using with your permission a covered "auto" you own, hire or borrow, except:
>     (1)    The owner or anyone else from whom you hire or borrow a covered 'auto' . . .
>     (2)    Your "employee" if the covered "auto" is owned by the "employee" or a member of his or her household.
> c.    Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

(Id.).

### C.    Analysis

Defendants concede that subsections (b) and (c) of the above definition of "Who Is An Insured" are inapplicable. Subsection (b) does not apply because Larry Petit, an employee, owned the car he was driving. Subsection (c) does not apply because Larry Petit is liable only for his own conduct, not for the conduct of anyone else. Liability coverage in this case hinges on whether Larry Petit qualifies as an "insured" under subsection (a) of the definition.

Citing Westfield Insurance Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, Defendants argue that the word "You" is ambiguous and must be construed to include not only Renfroe, the Named Insured, but also Renfroe's employees. They then argue that because Petit was driving a covered "auto," *i.e.*, a vehicle not owned by Renfroe but being used in connection with

Renfroe's business, he falls within the definition of an "insured" under subsection (a). Liberty Mutual objects to Defendants' interpretation.

Galatis involved an uninsured and underinsured motorist ("UM/UIM") insurance policy that was issued to a corporation. Galatis significantly limited the Supreme Court of Ohio's previous ruling in Scott-Pontzer v. Liberty Mutual Fire Insurance Co., 85 Ohio St.3d 660, 710 N.E.2d 1116 (Ohio 1999). In Scott-Pontzer, a UM/UIM policy had been issued to a corporation. One of the corporation's employees, Christopher Pontzer, was killed in an accident while driving his wife's vehicle. Even though Christopher was not acting in the scope of his employment at the time of the accident, his wife filed a claim for UM/UIM benefits through his employer's insurance company.

As in the present case, an "insured was defined as "you" and "you" was further defined as the "Named Insured shown in the Declarations." Only the corporation was listed as the "Named Insured." The court nevertheless found that, in the context of a policy that provided UM/UIM coverage, the definition of "you" was ambiguous. It reasoned that UM/UIM coverage existed for the purpose of protecting individuals, not vehicles. A corporation "cannot occupy an automobile, suffer bodily injury or death, or operate a motor vehicle." Therefore, "naming the corporation as the insured is meaningless unless the coverage extends to some person or persons -- including to the corporation's employees." 85 Ohio St.3d at 664, 710 N.E.2d at 1119. The court therefore concluded that Pontzer's wife was entitled to coverage under the UM/UIM insurance policy issued to Pontzer's employer.

In Galatis, the Supreme Court of Ohio recognized that the Scott-Pontzer decision had caused chaos in the courts. It therefore narrowed the holding in Scott-Pontzer, and concluded that UM/UIM coverage issued to a corporation would be extended to employees "only while they are acting within

the course and scope of their employment." Galatis at ¶ 2. The court noted that it was doubtful that the parties "ever conceived of contracting for coverage for off-duty employees occupying noncovered autos, let alone the family members of the employees." Id. at ¶ 39.

Relying on Scott-Pontzer and Galatis, Defendants argue that "you" is ambiguous and, because Larry Petit was acting in the scope of his employment at the time of the accident, the policy should be construed to extend liability coverage to him. Liberty Mutual argues that, assuming *arguendo* that Ohio law applies,[2] Scott-Pontzer and Galatis are factually and legally distinguishable from this case. The Court agrees.

Those cases involved UM/UIM coverage, which exists to protect individuals involved in accidents with uninsured and underinsured motorists. This case, in contrast, involves a general commercial business auto policy, the purpose of which is to protect the corporation from vicarious liability for damages resulting from the negligence of one of its employees. The concerns that led the Supreme Court of Ohio to find that "you" was ambiguous in the context of a UM/UIM policy are simply non-existent here. Although a corporation may not be able to suffer bodily injury or operate a motor vehicle, a corporation can clearly be held vicariously liable for the negligence of its employees.

Numerous Ohio courts have recognized this important distinction. See Chickey v. Watts, 10th Dist. Nos. 04AP-818, 04AP-1269, 2005-Ohio-4974, at ¶¶ 57-58 (finding no ambiguity in the word "you" relating to liability coverage because such coverage was not dependent on the insured suffering bodily injury or death; rather, coverage existed if the insured became legally obligated to

---

[2] As Liberty Mutual notes, Defendants have cited to no Alabama cases holding that "you" is ambiguous when a corporation is listed as the Named Insured in a liability policy.

pay damages as a result of a situation covered by the policy); Pitsenbarger v. Foos, 2d Dist. Nos. 2003 CA 22, 2003 CA 26, 2003 CA 27, 2003-Ohio-6534, at ¶ 24 (refusing to define "you" to include employees because, "in a liability policy, a corporation can be held liable for damages"); Kleyman v. Allstate Ins. Co., 5th Dist. No. 2008 AP 05 0032, 2008-Ohio-7012, at ¶ 53 (holding that designating the LLC "as the named insured is not meaningless under the terms of the commercial auto liability policy because the LLC legal entity can be held liable for damages; therefore, the term 'you' as used in the liability policy is not ambiguous"); Hastings Mut. Ins. Co. v. Halatek, 174 Ohio App.3d 252, 2007-Ohio-6923, 881 N.E.2d 897, at ¶¶ 58-60 (distinguishing the UM/UIM policy at issue in Galatis from a policy relating to liability coverage arising out of the use of a covered auto and citing Chickey for the proposition that "you" is unambiguous in the context of liability coverage and need not be construed to extend such coverage to employees).

Based on the reasoning set forth in these cases, this Court concludes that the term "you," as used in subsection (a) of the definition of "Who Is An Insured," is not ambiguous. "You" is expressly defined as the Named Insured, *i.e.*, Renfroe. Because Renfroe can be held vicariously liable for the negligence of its employees, limiting the term in this way in the context of a liability policy does not render it meaningless and there is no reason to rewrite the contract to extend coverage to Renfroe's employees.

In support of their memorandum in opposition, Defendants argue that interpreting "you" and "your" to include only Renfroe is also ambiguous with respect to the policy's definition of "Nonowned Auto." As noted above, a "Nonowned Auto" is defined as "[o]nly those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes 'autos' owned by your 'employees' . . . but only while used in your business or personal affairs."

11

(Ex. B to Renfroe Aff. at 27). Apparently attempting to build on the reasoning set forth in Scott-Pontzer, Defendants argue that because a corporation cannot "use" a vehicle or have "personal affairs," this provision must be construed to extend coverage to the employee operating the vehicle, regardless of whether the employee or the corporation has been sued. According to Defendants, the intent of the insurance policy is to "cover non-owned autos of employees and the employee operating the covered autos." (Mem. in Opp'n at 9).

The Court rejects these arguments. The clear purpose of this type of insurance policy is to protect the *corporation* from vicarious liability arising from the negligent operation of motor vehicles by its employees acting in the scope of their employment. Liberty Mutual agreed to "pay all sums [that Renfroe] legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (Ex. B to Renfroe Aff. at 28). As Liberty Mutual correctly notes, Defendants in this case have never alleged that Renfroe is vicariously liable for Larry Petit's negligence. Rather, they allege that Larry Petit is solely liable, and is covered as an "insured" under the Liberty Mutual policy. But there is no reason to believe that the parties to this contract intended to extend liability coverage to Larry Petit or any other employee. In fact, Petit was required, as a condition of his employment, to maintain his own auto insurance for his own automobile.

Because Larry Petit does not fall within the definition of "you" under subsection (a) of the policy's definition of "Who Is An Insured," there is no need for the Court to determine whether he was operating a "covered auto" at the time of the accident, *i.e.*, whether he was acting in the scope of his employment. Pursuant to the clear and unambiguous terms of the insurance policy at issue, Larry Petit is not an "insured" entitled to liability coverage, and Liberty Mutual is not obligated to

12

pay any damages assessed against him as a result of the November 15, 2005 accident.  Summary judgment in favor of Liberty Mutual is therefore warranted.

**IV.     Conclusion**

For the reasons stated above, the Court **GRANTS** Plaintiff Liberty Mutual's motion for summary judgment (Doc. 22).  Because Larry Petit does not qualify as an "Insured" under the business automobile policy issued to E.A. Renfroe & Co. by Liberty Mutual, Liberty Mutual has no duty to indemnify him for any damages assessed against him as a result of the November 15, 2005 automobile accident that resulted in Karol Petit's death.  Nor can Eric Petit, Leslie Jo Petit, or the Estate of Karol Petit recover damages under the Liberty Mutual policy.  The Clerk is therefore directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**


Date: June 7, 2010                              **/s/ John D. Holschuh**
                                                John D. Holschuh, Judge
                                                United States District Court